IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| BRADFORD S. HOLUP, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-19-2097 |
| WARDEN WCI RICHARD GRAHAM, *et al.*, | * | |
| Defendants. | * | |
|  | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Self-represented Plaintiff Bradford S. Holup, an inmate incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed this 42 U.S.C. § 1983 action against Defendants Dr. Yahya Ali, Dr. Asresahegn Getachew, and Olivia Pyles (collectively, the "Medical Defendants"), and Western Correctional Institution ("WCI") Warden Richard Graham.[1] ECF No. 1. In the Complaint, Plaintiff alleges that while he was housed in the infirmary at WCI, Defendants were deliberately indifferent to his medical needs when they failed to ensure that he was transported to a medical specialist in a timely manner for removal of pins that had been surgically inserted in his hand. *Id.* at 2-4. Plaintiff claims that as a result of the delay, he suffered severe pain, his hand became infected, and he lost its full mobility. *Id.* at 3-4. He seeks compensatory and punitive damages. *Id.* at 7.

On December 14, 2020, the Medical Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 26. Following receipt of the Medical

---

[1] Plaintiff voluntarily dismissed his Complaint on March 6, 2020, and the case was reopened upon Plaintiff's motion on October 15, 2020. *See* ECF Nos. 22, 25.

1

Defendants' Motion, Plaintiff sought to add the "Offsite Scheduler" as a Defendant through a Motion to Amend the Complaint, filed on December 23, 2020 (ECF No. 29),[2] that the Medical Defendants opposed (ECF No. 31). Plaintiff concurrently filed a Motion to Appoint Counsel. ECF No. 30. On February 8, 2021, Plaintiff filed an opposition to the Medical Defendants' Motion (ECF No. 34),[3] and the Medical Defendants replied (ECF No. 38). On February 11, 2021, Warden Graham filed a Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment. ECF No. 35. Plaintiff subsequently opposed Warden Graham's Motion (ECF No. 39) and filed a surreply (ECF No. 40), which the Medical Defendants moved to strike (ECF No. 41). On July 12, 2021, Plaintiff moved for judgment on the pleadings. ECF No. 43.

No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Warden Graham's dispositive motion, the Medical Defendants' motion to strike the surreply, and Plaintiff's motions to amend the Complaint and for appointment of counsel shall be granted. Within 30 days of appointment of counsel, Plaintiff shall file an Amended Complaint. Consequently, the Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Plaintiff's Motion for Judgment shall be denied.

---

[2] Although the Court received Plaintiff's Motion to Amend on January 11, 2021, it was signed on December 23, 2020, and appears to have been deposited in NBCI Outgoing Mail that same day. *See* ECF No. 29 at 3; ECF No. 29-1 at 2. *See also Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's submission is deemed to have been filed on the date it was deposited in the prison mailing system); *accord Cohen v. Rosenstein*, 804 Fed. App'x. 194, 195 (2020) (applying *Houston*'s prison mailbox rule to filing of amended complaint in § 1983 case).

[3] Plaintiff filed a Motion for Extension of Time to file this opposition response, ECF No. 32, which the Court shall grant, *nunc pro tunc*.

I.      **BACKGROUND**[4]

   A. **Plaintiff's Allegations**

In his Complaint, Plaintiff alleges that on July 11, 2018, he underwent surgery at the Western Maryland Health System ("WMHS") to correct a "crushed" knuckle on his right hand. Compl., ECF No. 1 at 2.[5] During the procedure, Dr. Emma Jackson implanted two pins into Plaintiff's knuckle in order to treat the fracture. *Id.* at 2-3. On July 24, 2018, Plaintiff was again transported to WMHS for a follow-up appointment, at which time Dr. Jackson stated that the injury was healing nicely. *Id.* at 3. She also instructed Plaintiff to return within two weeks for removal of the pins. *Id.*

Plaintiff was not transported back to WMHS within two weeks. *Id.* He constantly asked the WCI nurses and nurse practitioners why the pins were still in his hand and asked to see Dr. Yahya for pain medication, but Dr. Yahya never visited or consulted with Plaintiff regarding his pain or the delay in returning to the hospital. *Id.* Plaintiff claims that in late August 2018, his hand became infected, and he suffered from acute tendonitis. *Id.* Although he was given antibiotics, the pain persisted. *Id.*

Plaintiff was finally transported back to WMHS for pin removal on October 4, 2018. *Id.* At that time, Plaintiff was unable to close his hand, and Dr. Jackson stated that due to the delay in pin removal, Plaintiff may never regain full mobility. *Id.* at 4. Plaintiff subsequently underwent six sessions of physical therapy based on Dr. Jackson's recommendation, but he

---

[4] Unless stated otherwise, all facts taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

experienced no significant improvement. *Id.* Plaintiff claims that he now has a permanently "locked tendon." *Id.*

On October 16, 2018, Plaintiff filed a grievance through NBCI's Administrative Remedy Procedure ("ARP"), complaining about the medical staff's failure to timely return him to the hospital for removal of the pins. *Id.*; *see also* ARP, ECF No. 1-1. NBCI Acting Warden Jeffrey Nines found the ARP to be meritorious, finding that Plaintiff was to return within two weeks of July 24, 2018, to have his pins removed, and the pins were not actually removed until October 4, 2018. *Id*. Warden Nines noted that "Providers shall be educated on the importance of tracking consults" and "[t]he offsite scheduler shall be educated on the importance of scheduling consults for collegial in a timely manner." ECF No. 1-1 at 1.

On July 17, 2019, Plaintiff initiated this action, alleging that Defendants demonstrated a willful disregard to his serious medical need sufficient to show deliberate indifference on their part.

### B. Medical Defendants' Response

The Medical Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment accompanied by a memorandum and Plaintiff's medical records. ECF No. 26. The Medical Defendants note that Plaintiff was initially seen at the WMHS emergency room on July 5, 2018, following an altercation with another inmate that caused fractures to his left ankle and right hand. ECF No. 26-4 at 2-3. Plaintiff's ankle was treated by Dr. Thompson while his hand was evaluated by Emme Chapman-Jackson, MD. *Id.* With regard to the fractures in Plaintiff's right hand, Dr. Jackson stated:

> I recommend elongating the finger while he is asleep and placing percutaneous wires to give better alignment to the metacarpal fracture site. Risk of bleeding, infection, malunion, nonunion, arthritis in the joint were all explained in detail to the patient. He was explained that due to the amount of comminution and

Case 8:19-cv-02097-GJH   Document 44   Filed 09/27/21   Page 5 of 18

> possible component of a previous old fracture in the same area will make him have a nonideal outcome from this fracture. He was told that the surgery will align it as best as possible. However, he will still likely have early arthritis in this joint. He is understanding of this and wished to proceed with the above stated procedure.

*Id.* at 5.

The Medical Defendants do not dispute that Plaintiff underwent hand surgery on July 11, 2018, returned to the hospital for a follow-up on July 24, 2018, and was directed to come back for removal of the pins in two weeks. *Id.* at 26. Dr. Jackson indicated that she would "need to see an xray to check for healing prior to removal of the pins." *Id.* at 26. Upon Plaintiff's return to WCI later that day, Krista Self, RNP submitted the request for a follow-up in two weeks, along with directions to have x-rays of the right hand prior to the visit. *Id.* at 28.

In the two weeks that followed, Plaintiff was seen by medical staff six times. The Medical Defendants note that Plaintiff did not complain of any right hand pain during this time, and his Tramadol prescription for pain remained active. *Id.* at 30-36. During a visit on August 7, 2018, Plaintiff asked when the pins would be taken out; however, nothing in the nurse's notes indicates that his inquiry was addressed. *Id.* at 33.

Plaintiff continued to have regular visits with WCI medical staff. *Id.* at 37-40. During infirmary rounds on August 14, 2018, RNP Self ordered an "x-ray of hand to confirm placement of hardware" and noted that they "continued to await return visit to orthopedics and hand surgeon." *Id.* at 41-42. On August 18, 2018, an x-ray of the right hand was completed, showing "[f]racture of the distal second metacarpal bone with postsurgical 2 metallic pins in place across the fracture site." *Id.* at 43. Plaintiff had visits with WCI medical staff on August 18, August 20, August 27, and September 3, 2018, but it does not appear that the x-ray results or pin removal were discussed. *Id.* at 45-49.

On the morning of September 5, 2018, Plaintiff informed Shawna Upole, LPN that "the pins are overdue to come out of my hand," but there is no indication that his concern was addressed. *Id.* at 51. During infirmary rounds later that day, Plaintiff told Katrina Opel, CRNP that he was due for a follow-up with orthopedics, and CRNP Opel said she would "check with scheduler to see if the appointment has been made." *Id.* at 52. On September 6, 2018, CRNP Opel noted that the "[s]cheduler is currently waiting on the patient's visit." *Id.* at 56.

On September 9, 2018, while updating Plaintiff's chart, Janette Clark, NP sent an inquiry regarding the July 24, 2018 request for a follow-up appointment with the hand surgeon and an August 9, 2018 request for an orthopedic consultation. *Id.* at 60. On September 10, 2018, Holly Pierce, CRNP noted that "[p]er scheduling orthopedic appointment is pending," but provided no additional details regarding pin removal by the hand surgeon. *Id.* at 61.

On September 18, 2018, Plaintiff stated that the pins were really bothering him. *Id.* at 64. On September 20, 2018, NP Opel noted that Plaintiff complained of pain to his right hand and that he was "still waiting to be seen by ortho and scheduler has been notified." *Id.* at 65. During an infirmary visit on September 24, 2018, Plaintiff asked if there had been any news regarding his requested appointments. *Id.* at 69. The following day, he asked if the pins would grow into his bone, but there is no indication that he received any response. *Id.* at 70. On September 26, 2018, LPN Upole noted that Plaintiff "[c]ontinues to wait for surgery to remove pins."

On October 1, 2018, Samantha Thompson, LPN noted that Plaintiff pulled one of the pins out of his hand. *Id.* at 75. On October 4, 2018, Plaintiff was transported to WMHS, where an x-ray of his right hand was completed, showing progression of healing and stable alignment. *Id.* at 76-78. That same day, Dr. Jackson removed the remaining pin and noted "stiffness to the PIP

6

and MCP joints due to the finger being immobilized for so long." *Id.* at 78.  Dr. Jackson stated that "aggressive" occupational therapy was "need[ed] . . . as soon as possible." *Id.*

### C. Warden Graham's Response

In the memorandum filed in support of Warden Graham's Motion to Dismiss, or in the Alternative, for Summary Judgment, he states that correctional officers and supervisors employed by the Department of Public Safety and Correctional Services are trained to maintain safety and security in prisons.  *See* ECF No. 35 (citing Affidavit of Jeffrey Nines, Warden of NBCI, ECF No. 35-2 ¶5).  Correctional staff duties include performing rounds, counts, administering first aid, and escorting detainees to medical and other appointments.  *Id.*  Correctional staff, however, do not train, supervise, or control medical or nursing decisions made by the contracted medical provider's employees, and they have no authority to direct patient care.  *Id.* at ¶¶ 3-4.  Nor are they authorized to access a patient's medical records, or to assess, evaluate, or treat a detainee's medical condition.  *Id.* at ¶¶ 4-5 (citing Health Insurance Portability and Accountability Act of 1996, 45 C.F.R. §§160, 164(A), (E)).

## II.   PLAINTIFF'S MOTIONS

Plaintiff has filed a Motion to Amend the Complaint, Motion to Appoint Counsel, and Motion for Judgment.  Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id.* "Where the proposed amendment to the complaint appears to be a futility, however, this court has the discretion to deny leave to amend." *Pevia v. Wexford Health Source, Inc.*, Civil Action No. ELH-16-3810, 2018 WL 6271048, at *1 (D. Md. Nov. 30, 2018). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Id.* (citing *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.")).

Here, the Medical Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on December 14, 2020, and Plaintiff filed his first and only Motion to Amend nine days later, on December 23, 2020. Thus, Plaintiff's Motion is timely, and he is entitled to amendment of the Complaint.

The Medical Defendants argue that amendment would be futile as Plaintiff only seeks to add the Offsite Scheduler as a Defendant. The Medical Defendants aver that "scheduling an appointment is not the provision of medical care, and the scheduler can at most be considered negligent" rather than deliberately indifferent. ECF No. 31 ¶¶6-7. The Medical Defendants further assert that "Plaintiff fully recovered from his surgery and suffered no injury." *Id.* at ¶7.

As explained below, the Court finds that Plaintiff has adequately alleged a deliberate indifference claim based on the delay in returning him to WMHS for removal of the pins in his right hand. Moreover, Plaintiff has sufficiently alleged injury where the hand surgeon opined that he had joint stiffness "due to the finger being immobilized for so long." ECF No. 26-4 at 78. Plaintiff's Motion to Amend will thus be granted and his Motion for Judgment on the pleadings will be denied.

Also pending is Plaintiff's Motion to Appoint Counsel. Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." In civil actions, however, courts appoint counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Courts consider "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989).

Because Plaintiff has stated a colorable claim, the case will proceed to discovery. Since Plaintiff remains incarcerated, he would be unable to conduct discovery without the assistance of counsel. Accordingly, Plaintiff's Motion to Appoint Counsel will be granted, and counsel shall be directed to file an Amended Complaint within 30 days of appointment.

### III. DEFENDANTS' MOTIONS

#### A. Motion to Strike Surreply

The Medical Defendants have filed a motion to strike Plaintiff's filing at ECF No. 40, which was received by the Court on March 15, 2021, and docketed as a "Reply to Response." ECF No. 41. The Medical Defendants correctly note that following the filing of their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Plaintiff filed a response in opposition, to which the Medical Defendants replied. Plaintiff then filed the document in question.

Pursuant to Local Rule 105.2 (D. Md. 2021), a surreply is not permitted absent leave of the Court. Based on the date and content of Plaintiff's filing at ECF No. 40, it appears to be an impermissible surreply. Therefore, the Medical Defendants' Motion to Strike shall be granted.

## B. Dispositive Motions

### 1. Standards of Review

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94

(2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). However, despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" nor "construct full blown claims from sentence fragments." *Id.*

Defendants' Motions are styled as motions to dismiss or in the alternative, for summary judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss or for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one "that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when

the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal citation and quotation marks omitted).

Here, because the Court considers evidence submitted by the parties, Defendants' Motions will be reviewed as motions for summary judgment.

### 2. *Warden Graham*

Plaintiff claims that Warden Graham "failed in his official capacity" when he did not ensure Plaintiff's transportation to WMHS for removal of the pins in his hand. ECF No. 1 at 4. According to Plaintiff, Warden Graham disregarded Plaintiff's serious medical need by failing to oversee the prison infirmary and to ensure that all appointments are kept. *Id.*

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Also barred by the Eleventh Amendment are claims brought against state employees in their official capacity because a suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Therefore, Warden Graham is immune from suit in federal court for any claims brought against him in his official capacity.

To the extent Plaintiff is suing Warden Graham for acts taken in his individual capacity, his claims also fail. Viewing the evidence in the light most favorable to Plaintiff, there is no indication that Warden Graham was responsible for Plaintiff's medical care and treatment. Indeed, correctional staff have no authority to direct patient care or to treat a detainee's medical condition. Plaintiff has not alleged that Warden Graham was aware of Dr. Jackson's instructions to have Plaintiff transported back to WMHS within two weeks of July 24, 2018, nor could he, as correctional staff lack access to inmates' medical records.

In light of the foregoing, there are no genuine issues of material fact and Warden Graham is entitled to judgment as a matter of law.

### 3. Medical Defendants

In his Complaint, Plaintiff asserts a violation of the Eighth Amendment for deliberate indifference to his medical needs based on the Medical Defendants' failure to ensure that he was transported to WMHS in a timely manner for removal of the pins in his right hand. Plaintiff claims that, as a result of the delay, he lost full mobility in his affected hand.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was

available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001); *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

Here, Plaintiff had suffered serious injuries, including multiple fractures in his left ankle and right hand. The injuries were sufficiently apparent that he was sent to the emergency unit at WMHS, where Dr. Jackson surgically inserted two pins in his hand on July 11, 2018. The Medical

Defendants acknowledge that Plaintiff returned to WMHS for a follow-up on July 24, 2018, and was directed to return in two weeks to get the pins removed.

Objectively, it is undisputed that Plaintiff suffered a serious injury to his hand, which required corrective surgery. Subjectively, the Medical Defendants recognized that Plaintiff should have returned to WMHS to get the pins removed around August 7, 2018, yet they failed to ensure his return for the follow-up visit. Although Plaintiff has not identified direct evidence of a specific intent to withhold or delay medical care, the course of events is troubling. Despite the recommendation by Dr. Jackson for a follow-up by August 7, 2018, Plaintiff was not returned to WMHS until October 4, 2018.

The Medical Defendants assert that Plaintiff did not place any sick call requests regarding his hand or to inquire about returning to WMHS; however, Plaintiff states that he could not write because of the pins in his hand. Moreover, the medical records reflect that he was housed in the WCI infirmary, where he was regularly seen by medical staff, and that he regularly asked when he would be transported to get the pins removed. Although the nurses noted that Plaintiff frequently posed these questions, they did not indicate whether Plaintiff's inquiries were addressed.

On August 14, 2018, RNP Self noted that they continued to await Plaintiff's visit to orthopedics, presumably for his ankle injury, as well as his visit to the hand surgeon. Although an x-ray of the right hand was completed on August 18, 2018, it does not appear that medical staff discussed the x-ray results with Plaintiff, nor provided any updates about his return visit to WMHS during the weeks that followed. On September 5, 2018, CRNP Opel checked whether a follow-up with orthopedics had been scheduled but did not provide a status update regarding the follow-up with Dr. Jackson. It was not until September 9, 2018, that NP Clark inquired about the July 14, 2018 request for an appointment with the hand surgeon, in addition to the August 9,

16

2019 request for an orthopedic consultation. However, on the following day, a status update was provided only for the orthopedic appointment, with no details regarding pin removal by the hand surgeon.

By September 18, 2018, Plaintiff stated that the pins were bothering him. Shortly thereafter, Plaintiff complained of right hand pain and expressed concern that the pins would grow into his bone. Nonetheless, there was no indication that medical staff responded. It was not until after October 1, 2018, when Plaintiff pulled out one of the pins, that he was returned to WMHS. By that time, Dr. Jackson noted stiffness to Plaintiff's joints due to the finger being immobilized for so long, necessitating aggressive occupational therapy as soon as possible.

In sum, it is unclear why it took so long to transport Plaintiff back to WMHS to have the pins removed from his hand, who was responsible for ensuring his timely return, and the routine process followed by medical staff when an offsite medical visit is required. Viewed in the light most favorable to Plaintiff, the limited record before the Court shows that a genuine issue of material fact exists as to whether there was deliberate indifference to his serious medical need. Additional evidence obtained through discovery is necessary in order to permit a full adjudication of this claim. As such, the Court will deny the Medical Defendants' Motion.

## IV.   CONCLUSION

For the foregoing reasons, the Medical Defendants' Motion to Strike Plaintiff's Surreply is granted, and Plaintiff's Motion for Extension of Time to file an Opposition is granted, *nunc pro tunc*. Warden Graham's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for Summary Judgment, is granted, while the Medical Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Plaintiff's Motion for Judgment are denied.

Lastly, Plaintiff's Motion to Amend the Complaint and Motion to Appoint Counsel are granted. Within 30 days of appointment of counsel, Plaintiff shall file an Amended Complaint.

    A separate Order follows.

Date: <u>September 27, 2021</u>                          _____/s/_____
                                                            GEORGE J. HAZEL
                                                            United States District Judge